Filed 9/23/25  In re E.U. CA2/1

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re E.U., a Person Coming Under the Juvenile Court Law. | B345763 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>C.U.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP00632) |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

C.U. (Mother) appeals from the juvenile court's orders denying her Welfare and Institutions Code section 388 petition and terminating parental rights to her son E.U. (born in 2017). E.U.'s father, S.P. (Father), is not a party to this appeal. Mother does not challenge the merits of the court's rulings but solely contends we must conditionally reverse the order terminating her parental rights because the Los Angeles County Department of Children and Family Services' (DCFS) inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA), and the California statutes implementing ICWA (Welf. & Inst. Code, § 224 et seq.) (Cal-ICWA), was deficient.[1]  We affirm.

## BACKGROUND

We summarize only those facts relevant to this appeal.

In December 2022, the family came to the attention of DCFS following an investigation alleging Mother neglected E.U.

DCFS interviewed Mother at her in-patient rehabilitation program. She identified S.P. as E.U.'s biological father but stated he had no contact with the child, who lived with her, her parents (the maternal grandparents), and her sister (the maternal aunt). The court found S.P. was the alleged father.

Both Mother and the maternal grandparents denied several times that they had Native American ancestry. DCFS interviewed the maternal aunt twice but did not ask her about E.U.'s possible Indian status. The maternal grandmother reported she had a third child, M.U. (a maternal uncle), who lived in Mexico. DCFS did not interview the maternal uncle.

---

[1] Unless indicated otherwise, statutory references are to the Welfare and Institutions Code.

DCFS contacted the paternal step-grandfather, who stated he did not know Father's whereabouts, which remained unknown throughout the proceedings.[2] He stated that Father was born in the United States and did not have Native American ancestry, as his mother, V.P., was born in El Salvador and his father, C.P., was born in Guatemala. The paternal step-grandfather did not know how to get in touch with any paternal relatives.

DCFS conducted no further ICWA inquiry on the paternal side of the family other than periodically checking with the paternal step-grandfather to determine if he had new information about or contact with Father or the paternal grandparents. The step-grandfather, however, provided no new information.

The juvenile court found DCFS's ICWA inquiry was adequate, and no evidence suggested ICWA applied in the proceedings.

In April 2024, the court terminated reunification services.

Mother filed a petition pursuant to section 388. The court denied the petition on February 25, 2025, and terminated Mother's parental rights.

## DISCUSSION

Although Mother's notice of appeal challenges the juvenile court's order denying her section 388 petition, she raises no

---

[2] Because Father was only found to be an alleged father (see 25 U.S.C. § 1903(9) [parent defined as "any biological parent or parents of an Indian child" but not "the unwed father where paternity has not been acknowledged or established"]), all paternal relatives are only *alleged* paternal relatives. For the sake of argument, we treat them simply as relatives, not alleged relatives, and assume DCFS's duties of inquiry run to them.

argument on appeal concerning that order, challenging only the adequacy of DCFS's ICWA inquiry.  Mother therefore abandoned any challenge to the denial of her section 388 petition.  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [issues not raised in opening brief are deemed forfeited or abandoned].)

### A.    Pertinent Law

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128–1129 (*Dezi C.*).)  An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); Welf. & Inst. Code, former § 224.1, subd. (a) [adopting federal definition].)[3]

Under Cal-ICWA, the juvenile court and DCFS "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child."  (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1131–1132.)  "This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further

---

[3]  Section 224.1 was amended effective September 27, 2024. (Stats. 2024, ch. 656, § 2.)  We refer to the definitions in effect during Mother's earlier hearings.

4

inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); former § 224.1, subd. (c) [adopting federal definition].)

The juvenile court may find ICWA does not apply to a child's proceeding if it finds DCFS's "inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134; see § 224.2, subd. (i)(2).) The juvenile court's finding that ICWA does not apply thus " ' "implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." [Citations.]' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

We review for substantial evidence the juvenile court's factual finding that ICWA does not apply. (§ 224.2, subd. (i)(2).) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) " ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However,

the less developed the record, the more limited that discretion necessarily becomes." ' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102.)  Our high court thus has held that "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error." (*Dezi C.*, *supra*, at p. 1141.)

### B.    Analysis

Mother contends DCFS conducted a deficient ICWA inquiry because the record does not indicate DCFS interviewed Father, the paternal grandparents, or the maternal aunt or uncle about E.U.'s potential Indian ancestry.  DCFS asked only Mother, the maternal grandparents, and the paternal step-grandfather about possible Indian ancestry, all of whom denied that E.U. had any.  Mother argues this inquiry falls short of DCFS's statutory duty to ask "extended family members" whether E.U. is or may be an Indian child (§ 224.2, subd. (b)(2)), which includes any "grandparent [and] aunt or uncle" (25 U.S.C. § 1903(2); former § 224.1, subd. (c)).

Notwithstanding the facial requirements of section 224.2, courts do not read the statute as requiring that an initial Cal-ICWA inquiry be made of every single member of a child's extended family, including every first and second cousin, every niece and nephew, all aunts and uncles, all siblings-in-law, plus every other person who has an interest in the child.  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005-1006; see *Dezi C.*, *supra*, 16 Cal.5th at p. 1140 [the statute "does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry"].)

DCFS "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

If maternal grandparents have denied Indian ancestry, for example, the court could reasonably conclude that asking a maternal aunt about Indian ancestry would be unnecessary absent some indication the aunt's knowledge of the family ancestry is superior to her own parents' knowledge. (*In re C.R.* (2025) 112 Cal.App.5th 793, 802.)

Of the paternal relatives, DCFS was required to find and make inquiries of only those extended family members who were reasonably available. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140 [DCFS required to make only reasonable inquiries of reasonably available extended family members].) Because neither Mother nor the paternal step-grandfather had contact information for Father or the paternal grandparents, the court could reasonably find that the paternal step-grandfather was the only reasonably available paternal relative, and DCFS's inquiry of him regarding E.U.'s status as an Indian child constituted an adequate investigation. (See *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 ["we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided"]; *In re H.B.* (2023) 92 Cal.App.5th 711, 720 ["[r]equiring [DCFS] to track down information about extended family members beyond that offered by participants in the proceedings would impose an undue burden on [DCFS] and necessarily reduce the resources it has to otherwise protect the welfare of dependent children"].)

We conclude the juvenile court had sufficient evidence upon which to determine that DCFS'S ICWA inquiry was "adequate,

7

proper, and duly diligent," and there was no reason to believe E.U. is or may be an Indian child. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED

                                        ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.